1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9

10    MATHEW COLLETT,

11                        Plaintiff,

        v.

12    MASON COUNTY, et al.,

13

                        Defendants.

14

CASE NO. 3:23-CV-5654-TMC-DWC

ORDER ON MOTIONS TO
COMPEL

15        Plaintiff Mathew Collett, proceeding *pro se* and *in forma pauperis*, initiated this civil

16    rights action pursuant to 42 U.S.C. § 1983. *See* Dkt. 1. Currently before the Court are Plaintiff's

17    Motion to Compel Discovery from Defendants Health Care Delivery Systems, Inc., Shannon

18    Slack, and Nurse Bree (collectively "HDS Defendants"), Dkt. 149, and his Motion to Compel

19    Discovery from Defendants Mason County, Kevin Hansen, Phil Harris,[1] Shane Schronberg,

20    Randy Newell, and Paula Blush (collectively "County Defendants"), Dkt. 151.

21

22        _____

23        [1] The Court identifies Defendants "Kevin Hansen" and "Phil Harris" as their names are currently reflected on the docket. *See* docket. However, in Plaintiff's Motion to Compel Discovery, his discovery requests, and County Defendants' most recent motion for summary judgment, these individuals are identified as Kevin "Hanson" and "Joel Harris." Dkt. 151 at 14, 22; Dkt. 151-1 at 4, 12; Dkt. 165 at 1, 6. Thus, in the subsequent discussion of Plaintiff's Motion and his discovery requests, the Court refers to these individuals as Defendants "Hanson" and "Harris."

24

Upon review, Plaintiff's Motion to Compel Discovery from HDS Defendants (Dkt. 149) is denied for failure to meet and confer and his Motion to Compel Discovery from County Defendants (Dkt. 151) is granted in part and denied in part.

## I.    Background

### A.    Plaintiff's Allegations

Plaintiff initiated this action in July 2023 concerning the conditions of his pretrial detention at Mason County Jail ("MCJ"). Dkts. 1, 1-1. In his Second Amended Complaint, which is the operative pleading for this action, Plaintiff brings four claims for relief under 42 U.S.C § 1983, and the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. §§ 2000cc to 2000cc-5 ("RLUIPA"). Dkt. 60.

In Counts I and II, Plaintiff alleges MCJ's meal services place a substantial burden on his religious expression in violation of the First Amendment to the United States Constitution and RLUIPA. *Id.* at 6–10. Plaintiff alleges he is a member of the Muslim faith, which requires him to follow certain dietary restrictions including the omission of non-halal foods, such as pork, from his diet. *Id.* at 6–8. Plaintiff asserts that MCJ's meal services place a barrier on his ability to adhere to a halal diet in two ways. *Id.* at 6–10.

First, in Count I, Plaintiff alleges that MCJ inmates who adhere to halal diets are limited to a plant-based meal plan consisting primarily of rice and beans. *Id.* at 6–8. Plaintiff states that the plant-based diet causes him painful and disruptive gastrointestinal issues, like gas and a frequent need to use the bathroom. *Id.* at 7. Plaintiff also states that the plant-based diet aggravates two of his preexisting health conditions, including thyroid disease, which requires a low-fiber diet, and complex regional pain syndrome ("CRPS") caused by a prior hernia operation, which Plaintiff alleges is made more painful by the plant-based diet. *Id.* at 7–8.

1    Next, in Count II, Plaintiff alleges that his meals are cross contaminated with pork. *Id.* at

2  9. Although Plaintiff says his meals are served with different utensils, he alleges that cross

3  contamination with pork still occurs in a few different ways. *Id.* at 9–10. First, Plaintiff alleges

4  his meals are prepared and served in the same kitchen that prepares pork for MCJ staff. *Id.* at 9.

5  Second, Plaintiff alleges that "trustees" add pork-based products to inmate meals "without staff

6  knowledge." *Id.* Third, Plaintiff alleges his meals are transported on the same cart and served on

7  the same trays as non-halal meals, allowing for spillage and food residue to contaminate his

8  meals. *Id.* at 9–10.

9    In Counts III and IV, Plaintiff complains about various conditions and policies at MCJ

10 that allegedly prevent him from practicing his faith. *Id.* at 10–13. Plaintiff's allegations in Count

11 III concern the availability of Qurans, prayer rugs, kufis, and prayer beads at MCJ. *Id.* at 10–12.

12 He alleges that there are "many Bibles and no Qurans" at MCJ and, though Plaintiff was able to

13 obtain an English-version of the Quran from a free website, he does not have access to an

14 Arabic-version of the religious text. *Id.* at 11. Next, Plaintiff alleges that, when he first arrived at

15 MCJ, inmates were prohibited from having prayer rugs, kufis, and prayer beads, even though

16 these items were donated by a "3rd party employee/couns[elor] at the Jail." *Id.* at 12. Plaintiff

17 states that some of these prohibitions were lifted after he filed this action, but explains he is still

18 not permitted to have prayer beads. *Id.*

19    Finally, Count IV concerns the availability of religious counselors and services for

20 Muslim inmates. *Id.* at 13. According to Plaintiff, MCJ employs a full-time chaplain to provide

21 counselling and services for Christian inmates. *Id.* When Plaintiff asked about similar resources

22 for his faith, he was allegedly told it was his responsibility to contact Imams and see if they were

23 willing to provide religious services on a voluntary basis. *Id.* Plaintiff alleges that he sent

24 requests to local Mosques but has not received any responses. *Id.*

B.  <u>Discovery and Motions to Compel</u>

The Court opened discovery in this matter on October 6, 2023. Dkt. 36. Initially, the deadline to complete discovery was February 6, 2024, with motions to compel discovery due not later than January 16, 2024. *Id.*

On March 4, 2024, Plaintiff filed a motion to compel discovery and identified several circumstances that prevented him from obtaining and moving to compel discovery before the deadlines to do so expired. *See* Dkt. 116. Around the same time, Plaintiff moved to stay this case and filed several other motions concerning his limited access to legal resources and discovery materials while he received medical treatment at a different facility. Dkt. 132; *see also* Dkts. 113, 117, 126, 127,

On March 28, 2024, the Court stayed this case to provide Plaintiff a meaningful opportunity to prosecute his claims. Dkt. 136 at 6–9. The Court encouraged the parties to continue resolving any discovery disputes during the stay and ordered that Plaintiff would be permitted to file motions to compel discovery after the stay was lifted. *Id.* at 8–9.

On September 19, 2024, the Court lifted the stay and required that any motions to compel discovery be filed not later than October 18, 2024. Dkt. 147. Plaintiff filed his Motions to Compel Discovery from HDS Defendants (Dkt. 149) and County Defendants (Dkt. 151) on October 10, 2024. The Motions are fully briefed and ripe for consideration by the Court.

**II.    Legal Standard**

The Court strongly disfavors discovery motions and prefers that the parties resolve discovery issues on their own. However, if the parties are unable to resolve a discovery dispute, the requesting party may move for an order to compel. Fed. R. Civ. P. 37(a)(1).

As a threshold matter, motions to compel discovery must include a certification that "the movant has in good faith conferred or attempted to confer with the person or party failing to

make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1); *see also* Local Rules W.D. Wash, LCR 37(a)(1). "A good faith effort to confer with a party or person not making a disclosure or discovery requires a face-to-face meeting or a telephone conference." LCR 37(a)(1). If the movant fails to include such a certification, the court may deny the motion without addressing the merits of the discovery dispute. *Id*.

A party may obtain discovery regarding any nonprivileged information that is relevant to any party's claims and defenses and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). Information is relevant if it is "reasonably calculated to lead to the discovery of admissible evidence." *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005) (citations and quotations omitted). The Court has broad discretion to determine relevance. *Id.* To determine whether a discovery request is proportional to the needs of the case, the Court considers "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

"The party seeking to compel discovery has the burden of establishing that its request satisfies the relevancy requirements of Rule 26(b)(1)." *Bryant v. Ochoa*, 2009 WL 1390794, at *1 (S.D. Cal. May 14, 2009). Once the party seeking discovery has established the relevance of their requests, the burden shifts to the party resisting discovery to show the request should be denied. *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975); *Bryant*, 2009 WL 1390794, at *1 ("[T]he party opposing discovery has the burden of showing that the discovery should be prohibited, and the burden of clarifying, explaining or supporting its objections.").

The Federal Rules of Civil Procedure impose specific requirements for the different discovery methods. Relevant here are the use of interrogatories, requests for production, and

1    requests for admissions. The use of interrogatories is governed by Rule 33 of the Federal Rules

2    of Civil Procedure, which provides that a party may serve on any other party interrogatories that

3    relate to any matter within the scope of discovery defined in Rule 26(b). Fed. R. Civ. P. 33(a)(2).

4    "The grounds for objecting to an interrogatory must be stated with specificity, [and] [a]ny

5    ground not stated in a timely objection is waived unless the court, for good cause, excuses the

6    failure." Fed. R. Civ. P. 33(b)(4). Any interrogatory not objected to must be answered fully in

7    writing under oath. Fed. R. Civ. P. 33(b)(3).

8            Requests for production are governed by Rule 34 of the Federal Rules of Civil Procedure,

9    which provides that a party may request the production of any document within the scope of

10   Rule 26(b). Fed. R. Civ. P. 34(a). "For each item or category, the response must either state that

11   inspection and related activities will be permitted as requested or state an objection to the

12   request, including the reasons." Fed. R. Civ. P. 34(b)(2)(B). The responding party is responsible

13   for producing all items in the "responding party's possession, custody, or control." Fed. R. Civ.

14   P. 34(a)(1). Actual possession, custody or control is not required; rather, "[a] party may be

15   ordered to produce a document in the possession of a non-party entity if that party has a legal

16   right to obtain the document or has control over the entity who is in possession of the document."

17   *Soto v. City of Concord*, 162 F.R.D. 603, 619 (N.D. Cal. 1995) (citation omitted).

18           Requests for admission are governed by Rule 36 of the Federal Rules of Civil Procedure.

19   Rule 36 allows a party to serve a written request seeking to have another party admit the truth of

20   any matters relevant to the parties' claims and defenses, including the truth of "facts, the

21   application of law to fact, or opinions about either…and the genuineness of any described

22   documents." Fed. R. Civ. P. 36(a)(1). "The purpose of Rule 36(a) is to expedite trial by

23   establishing certain material facts as true and thus narrowing the range of issues for trial." *Asea,*

24   *Inc. v. S. Pac. Transp. Co.,* 669 F.2d 1242, 1245 (9th Cir. 1981). A party who receives requests

1    for admissions may answer by admitting the truth of the facts asserted, by specifically denying

2    the truth of the statements, or by explaining in detail why the party can neither admit nor deny

3    the truth of the statements. Fed. R. Civ. P. 36(a)(4). If the requesting party is not satisfied with

4    the responding party's answers or objections, they may move for a determination of the

5    sufficiency of the response. *Id.* 36(a)(6).

6         Ultimately, the Court's discretion to permit or deny discovery is substantial. *See Hallett*

7    *v. Morgan*, 296 F.3d 732, 751 (2002) ("[A district court's] decision to deny discovery will not be

8    disturbed except upon the clearest showing that denial of discovery results in actual and

9    substantial prejudice to the complaining litigant."). The Court may deny or limit the production

10   of otherwise discoverable materials if it determines: "(i) the discovery sought is unreasonably

11   cumulative or duplicative, or can be obtained from some other source that is more convenient,

12   less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to

13   obtain the information by discovery in the action; or (iii) the proposed discovery is outside the

14   scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C)(i)–(iii).

15   **III.   Motion to Compel Discovery from HDS Defendants (Dkt. 149)**

16        Plaintiff moves for an order compelling HDS Defendants to respond to four requests for

17   production, Dkt. 149 at 6–9, 14–15, and six interrogatories, *id.* at 9–11, 15, 19. HDS Defendants

18   contend that the Motion should be denied because they recently served Plaintiff with additional

19   answers to his discovery requests and the parties have not met and conferred about that recent

20   production. Dkt. 157.

21        In his Motion and in a declaration submitted in support, Plaintiff states that he met and

22   conferred with Defense Counsel for HDS Defendants on April 23 and June 11, 2024, but was not

23   able to reach an agreement on the disputed discovery. Dkt. 149 at 1; *see also* Dkt. 148. Plaintiff

24

1    further states that, after these conferences, he received additional discovery responses from HDS

2    Defendants. *Id.*

3        In response, HDS Defendants argue Plaintiff's Motion should be denied because the

4    parties have not met and conferred about all the discovery responses provided to date. Dkt. 157

5    at 1–2. In particular, HDS Defendants explain that they served Plaintiff with their initial

6    discovery responses on April 18, 2024, Dkt. 149 at 21–34, which was approximately three weeks

7    after the Court entered the stay in this matter, Dkt. 136. The parties conferred and, thereafter,

8    Plaintiff sent clarifications for his initial discovery requests and served HDS Defendants with

9    additional discovery requests. Dkt. 157 at 2; *see also* Dkt. 149 at 17–19. Defense Counsel for

10   HDS Defendants again conferred with Plaintiff and explained that supplemental discovery

11   responses would be provided after the stay in this case was lifted. *Id.*; Dkt. 158 at 1.

12       The Court lifted the stay in early October 2024 and, by the end of that month, HDS

13   Defendants served Plaintiff with supplemental responses to his first set of discovery requests,

14   Dkt. 158-1 at 2–13, and responses to Plaintiff's second set of discovery requests, *Id.* at 14–25;

15   *see also* Dkt. 157 at 2; Dkt. 158 at 2. Included with this second set of discovery responses was

16   production of Plaintiff's full medical file possessed by HDS Defendants. *See* Dkt. 158 at 2; Dkt.

17   158-1 at 3. For documents not produced in response to Plaintiff's requests, HDS Defendants

18   advised Plaintiff that the documents either did not exist or were not within their possession. *Id.* at

19   3–5. HDS Defendants also provided answers and objections in response to Plaintiff's

20   interrogatories. *Id.* at 5–16, 20–22.

21       In his reply, Plaintiff agrees that he has not met and conferred with HDS Defendants

22   about their second set of discovery responses, explaining that those responses were received after

23   he filed his Motion to Compel. Dkt. 174 at 1–2. Plaintiff urges the Court to consider his Motion

24   even though the meet and confer requirement has not been satisfied. *Id.* Plaintiff does not argue

1    that further discovery conferences would be unfruitful, nor does he allege that HDS Defendants

2    have refused to cooperate with him in discovery. *Id.* Instead, Plaintiff merely reasserts arguments

3    from his Motion that do not account for HDS Defendants' second set of discovery responses.[2] *Id.*

4        Because the parties have not exhausted informal methods of resolving their discovery

5    disputes and because Plaintiff does not show that further discovery conferences with HDS

6    Defendants would be unfruitful, the Court will not address the merits of Plaintiff's Motion to

7    Compel Discovery from HDS Defendants. *See Branch Banking & Tr. Co. v. Pebble Creek Plaza,*

8    *LLC*, 2013 WL 12176465, at *1 (D. Nev. July 26, 2013) (judicial intervention is appropriate only

9    when "informal negotiations have reached an impasse on the substantive issue in dispute").

10        Accordingly, Plaintiff's Motion to Compel Discovery from HDS Defendants (Dkt. 149)

11    is denied for failure to meet and confer as required by Rule 37 of the Federal Rules of Civil

12    Procedure and the local rules of this Court.

13    **IV.    Motion to Compel Discovery from County Defendants (Dkt. 151)**

14        Next, Plaintiff moves to compel further responses to the following discovery requests

15    served upon County Defendants:

| Document Title | Request Numbers | Docket Citation |
|---|---|---|
| Plaintiff's First Request for Documents within 30 days | 1, 2, 3, 4, 5, 6, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17 | Dkt. 151-1 at 2–3 |
| First Set of Interrogatories for Defendants Randy Newell and Joel Harris | 1, 2, 3, 4, 5, 6, 7, 8, 9 | Dkt. 151-1 at 4 |
| Extra Interrogatories for Defendant Mason County, 1st Set | 1, 3, 4, 7 | Dkt. 151-1 at 5 |

---

[2] More specifically, Plaintiff maintains that HDS Defendants should be required to produce "all logs, briefs, medical kites," and "all emails regarding the name Mathew Collett." *Id.* at 1–2. But, in their second set of discovery responses, HDS Defendants advised Plaintiff that they did not possess any additional "kites, grievances, logs, notes, and briefings," explaining that those documents were maintained by MCJ. Dkt. 158-1 at 3. With respect to Plaintiff's request to produce all email correspondence that mentions him by name, HDS Defendants advised that, "other than those protected by attorney-client privilege and/or work product," "[a]ll communications regarding Mr. Mathew Collett are verbal and/or noted in his medical records already provided." *Id.* at 4. Plaintiff fails to show the parties discussed and reached an impasse on these matters.

ORDER ON MOTIONS TO COMPEL - 9

| Plaintiff's First Request for Admissions | 1, 2, 3, 4, 5, 14, 15, 17, 20, 21, 25, 27, 29 | Dkt. 151-1 at 6–7 |
| Plaintiff's First Set of Interrogatories and Request for Production of Documents | 1, 2, 3, 4, 5, 7, 10 | Dkt. 151-1 at 8–9 |
| Interrogatories for Defendant Mason County | 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18 | Dkt. 151-1 at 10–11 |
| Interrogatories for Defendant, Defendant Hanson, Kevin | 1, 2, 3, 4, 5, 6, 7, 10, 15 | Dkt. 151-1 at 12–13 |
| Interrogatories for Defendant Shane Schronberg | 1, 9, 12 | Dkt. 151-1 at 14–15 |
| Interrogatories for Defendant, Defendant Harris, Joel | 1, 2, 5 | Dkt. 151-1 at 16 |

To support his Motion, Plaintiff first argues that the requirement to meet and confer with County Defendants about the disputed discovery has been satisfied and the parties have reached an impasse. Dkt. 151 at 1–2; *see also* Dkt. 152. Plaintiff next argues that County Defendants waived the ability to object to his discovery requests by failing to provide timely responses. Dkt. 151 at 5–6. Finally, Plaintiff argues that each disputed discovery request is relevant to his claims and contends that County Defendants' answers and objections were unreasonable. Dkt. 151 at 6–25. County Defendants oppose Plaintiff's Motion, arguing that their objections were timely and proper. Dkt. 159. They also submit declarations in support of their arguments and include some of their discovery responses as exhibits to those declarations. Dkts. 160, 161.

A.  Plaintiff and County Defendants have reached an impasse on discovery.

First, in a declaration submitted in support of his Motion, Plaintiff explains that he met and conferred with Defense Counsel for County Defendants but was unable to resolve the discovery disputes. Dkt. 152. Attorney Michael Throgmorton confirmed, via declaration, that he attended two telephonic discovery conferences with Plaintiff on February 23 and April 15, 2024. Dkts. 161, 162. Attorney Throgmorton states that both conferences occurred after County Defendants produced all their discovery responses in January 2024. Dkt. 162 at 2. In their briefing and submissions about these telephonic discovery conferences, both sides indicate that the opposite

1  party may not have put forth a sincere effort to resolve their discovery disputes as required by

2  Rule 37 of the Federal Rules of Civil Procedure and this Court's corresponding local rule. *See*

3  Dkt. 161 at 1–2 (stating Plaintiff was unprepared for February discovery conference); Dkt. 162 at

4  2 (stating Plaintiff "became angry" and "hung up" after discussing the objections to only two of

5  his discovery requests at April discovery conference); Dkt. 175 at 1, 3 (stating "counsel for the

6  County refused to confer" and that "Mr. Throgmorton got emotional" at both discovery

7  conferences). Based on the parties' submissions, the Court finds that the requirement to meet and

8  confer **in good faith** has not been satisfied.

9          Although the Court finds Plaintiff and County Defendants have not fully satisfied the

10  requirement to meet and confer, it is apparent from the record that they have reached an impasse

11  on discovery and that it is unlikely further discovery conferences between them would be

12  productive. *See Branch Banking & Tr. Co.*, 2013 WL 12176465, at *1. As it is unlikely the

13  parties will be able to resolve their discovery disputes without judicial intervention, the Court

14  will consider the merits of Plaintiff' Motion to Compel Discovery from County Defendants.

15          B.   County Defendants have not waived objections to Plaintiff's discovery requests.

16          Before turning to the merits of Plaintiff's Motion, the Court first addresses his argument

17  that County Defendants waived their ability to object by failing to respond to his discovery

18  requests within thirty days. Dkt. 151 at 4–6. In support of this argument, Plaintiff explains that he

19  first served County Defendants with his discovery requests in October 2023, but he did not

20  receive any correspondence from Defense Counsel for more than sixty days. *Id.*

21          County Defendants contend that Plaintiff's representations about the untimeliness of their

22  responses to his discovery requests lack important context that excuses their delayed responses.

23  Dkt. 159 at 4. They explain that, at they time they received Plaintiff's discovery requests in

24  October 2023, County Defendants immediately moved to stay discovery. *Id.* at 1 (citing Dkt. 40,

ORDER ON MOTIONS TO COMPEL - 11

filed October 13, 2023). However, on November 6, 2023, the Court granted Plaintiff leave to file an amended complaint and denied County Defendants' motion to stay discovery as moot. *Id.* (citing Dkt. 59). Three days after their motion to stay was denied, Defense Counsel for County Defendants represent that they mailed Plaintiff a letter saying that his discovery requests were unreadable and requesting that Plaintiff resend his requests in a more legible format. *See* Dkt. 160 at 4 (discovery letter to Plaintiff dated November 9, 2023); *id.* at 1 (declaration stating discovery letter was sent on November 9, 2023).

County Defendants moved to stay discovery for a second time on December 14, 2023. Dkt. 80. County Defendants state that they received a second set of discovery requests from Plaintiff while their second motion to stay discovery was pending and note that these requests were also "largely illegible." Dkt. 159 at 2. On January 9, 2024, the Court denied County Defendants' second motion to stay discovery. Dkt. 88. Defense Counsel then transcribed Plaintiff's handwritten discovery requests and served Plaintiff with the County Defendants' answers and objections on January 17, 2024. *See* Dkt. 160 at 6–31.

Based on the foregoing, the Court finds that County Defendants' responses to Plaintiff's discovery requests were timely. County Defendants were not required to respond to Plaintiff's discovery requests while their motions to stay discovery were pending or while they awaited Plaintiff's response to their letters seeking clarification on his discovery requests. As their discovery responses were timely, County Defendants did not waive the ability to object.

C.  Plaintiff does not carry his initial burden for many of his discovery requests.

The Court's review of the merits begins with an examination of whether Plaintiff has provided sufficient information about the discovery requests and responses that are the subject of his Motion. *See Ellis v. Cambra*, No. 02-CV-5646-AWI-SMS-PC, 2008 WL 860523 at *4 (E.D. Cal. Mar. 27, 2008) ("[The moving party] must inform the court which discovery requests are the

1  subject of his motion to compel, and, for each disputed response, inform the court why the

2  information sought is relevant and why [the opposing party's] objections are not justified.").

3        Plaintiff first seeks to compel answers to thirteen requests for admissions. Dkt. 151 at 16–

4  17. In his Motion, Plaintiff outlines his requests for admissions and explains why he believes

5  each request is relevant to his claims. *Id.* Plaintiff does not, however, provided any information

6  about the responses he received from County Defendants or explain why those responses did not

7  comply with Rule 36 of the Federal Rules of Civil Procedure. As such, Plaintiff has not provided

8  sufficient information for the Court to assess County Defendants' responses to Plaintiff's

9  requests for admission. For this reason, Plaintiff's request to compel additional responses to his

10  requests for admission is denied.

11        Next, Plaintiff seeks to compel responses to sixty-nine interrogatories and requests for

12  production. Dkt. 151 at 7–15, 17–25. For each discovery request falling in these categories,

13  Plaintiff explains why he believes the information and documents requested are relevant to his

14  claims. *Id.* Plaintiff also generally explains why he believes County Defendants' objections are

15  insufficient and why the objections should be overruled. *Id.* The Court finds Plaintiff has

16  provided sufficient information to enable further review of his interrogatories and requests for

17  production.

18        Having reviewed all the interrogatories and requests for production identified in

19  Plaintiff's Motion, the Court finds many are irrelevant, unspecific, and frivolous. *See Ivins v.*

20  *Corr. Corp. of Am.*, 291 F.R.D. 517, 520 (D. Mont. 2013) (courts have an "independent

21  obligation" to review discovery requests for specificity and frivolousness before granting a

22  motion to compel); *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1072 (9th Cir. 2004) ("District courts

23  need not condone the use of discovery to engage in fishing expeditions.") (cleaned up). Of these

24  sixty-nine discovery requests, about half seek information and documents that run far afield from

the issues presented in this case. *See, e.g.*, Dkt. 151 at 7 (requesting production of "any and all grievances, complaints, or other documents…concerning religion, religious diets, or religious materials"); *id.* at 14 (interrogatories asking Defendants Newell and Harris what city they grew up in and "what is the percentage of Muslims in that city"). Because Plaintiff casts such a wide net with these discovery requests, it is unsurprising that he considers each request to be relevant to his claims. But the mere possibility that a discovery request could produce admissible evidence is not enough to satisfy relevance. Instead, Plaintiff's discovery requests must be *reasonably calculated* to accomplish this task. *See Surfvivor Media, Inc.*, 406 F.3d at 635.

Upon review, the Court concludes the following discovery requests are not reasonably calculated to lead to the discovery of admissible evidence:

| Document Title | Request Numbers | Docket Citation |
|---|---|---|
| Plaintiff's First Request for Documents within 30 days | 1, 4, 6, 8, 10, 11, 12, 13, 16, 17 | Dkt. 151-1 at 2–3 |
| First Set of Interrogatories for Defendants Randy Newell and Joel Harris | 1, 2, 3, 4, 5, 6 | Dkt. 151-1 at 4 |
| Extra Interrogatories for Defendant Mason County, 1st Set | 1, 3 | Dkt. 151-1 at 5 |
| Interrogatories for Defendant Mason County | 1, 2, 3, 5, 6, 7, 10, 12, 14, 15, 16, 18 | Dkt. 151-1 at 10–11 |
| Interrogatories for Defendant, Defendant Hanson, Kevin | 1, 2, 3, 5, 7, 15 | Dkt. 151-1 at 12–13 |
| Interrogatories for Defendant, Defendant Harris, Joel | 1 | Dkt. 151-1 at 16 |

Therefore, Plaintiff's requests to compel interrogatory responses and production of documents for the above listed discovery requests are denied.

D. County Defendants did not respond to discovery requests to fullest extent possible.

The Court next examines County Defendants' answers and objections to Plaintiff's remaining discovery requests. To start, the Court finds County Defendants reasonably objected to several of Plaintiff's discovery requests. In particular, County Defendants appropriately objected to some of Plaintiff's discovery requests, including those listed above, as irrelevant,

overbroad, and vague. *See, e.g.*, Dkt. 160 at 22 (objecting and declining to answer interrogatory asking for a list of "titles of every Christian book in the [MCJ] library, every Islamic book, and every book on any other faith"). County Defendants also raised reasonable objections on privacy and security grounds, noting that a number of Plaintiff's discovery requests seek information about other inmates and personal information of MCJ staff and contractors. *See, e.g.*, *id.* (objecting to interrogatories asking about grievances and kites filed by other inmates) and *id.* at 8 (objecting to an interrogatory requesting the full names and mailing addresses for "every contact employee" or "3rd party contractor" at MCJ).

Notwithstanding these reasonable objections, County Defendants' discovery responses lack responsive information. "[A] responding party is not generally required to conduct extensive research in order to answer an interrogatory, but a reasonable effort to respond must be made." *See Williams v. Adams*, No. 1:05-CV-00124-AWI-SMS-PC, 2009 WL 1220311, at *1 (E.D. Cal. May 4, 2009). In most instances, County Defendants do not fulfill their "obligation to act in good faith and to provide responses to discovery requests to the fullest extent possible, even if they object to portions of a discovery request." *Cranford v. Nevada*, No. 3:21-CV-00386-RCJ-CLB, 2023 WL 3505467, at *2 (D. Nev. May 17, 2023). The discovery responses provided by County Defendants are not indicative of a party making a reasonable, good faith effort to respond. In fact, for all but five of Plaintiff's discovery requests, County Defendants provide *no* responsive information or documents. Dkt. 160 at 6–31.

To illustrate further, in an interrogatory for Mason County, Plaintiff asked, "[w]ho dictates what food is served to inmates at the Mason County Jail, please provide their full names and addresses, so that they can be contacted?" Dkt. 160 at 23. County Defendants responded with the following string of objections: "Irrelevant. Overly broad and unduly burdensome. Not reasonably calculated to lead to the discovery of relevant, admissible evidence. Vague.

1    Compound. Calls for a legal conclusion. Seeks personal and personnel information which the

2    plaintiff, as an active inmate, is prohibited from receiving." *Id.* Contrary to County Defendants'

3    objections, however, the Court finds this interrogatory is directly relevant to Plaintiff's religious

4    meal claims, it is not vague, overbroad, or burdensome, and it does not call for a legal

5    conclusion. Although the interrogatory does seek personal information of MCJ staff and/or

6    contractors, which is a valid security concern, it was unreasonable for County Defendants to

7    disregard the entire interrogatory on this ground.

8        County Defendants' objection to this interrogatory on relevancy grounds is concerning.

9    County Defendants have previously moved for summary judgment based on arguments about

10   who controls inmate diets at MCJ. *See* Dkt. 105 at 12 ("To the extent [Plaintiff] complains about

11   what is and is not on the halal diet he was granted, his complaint is with Defendant Summit

12   Foods as the county's independently-contracted food service provider at the jail."). It was

13   unreasonable for County Defendants to refuse to provide any information about who makes

14   decisions for the very meals Plaintiff challenges in this action. *See* Dkt. 60 at 6–10.

15       There are many other examples of County Defendants unreasonably objecting and

16   refusing to answer relevant and nonburdensome aspects of Plaintiff's interrogatories. *See*, *e.g.*,

17   Dkt. 160 at 14 (providing no responsive information to interrogatory asking, among other things,

18   how many Qurans are in stock at the MCJ library); *id.* at 15, 24, 29 (providing no responsive

19   information to interrogatories concerning MCJ policies and policy changes regarding kufis,

20   prayer rugs, and prayer beads); *id.* at 18, 22 (providing no responsive information to inquiries

21   about basic duties and employment status of Defendant Harris); *id.* at 23 (providing no

22   responsive information to interrogatory about whether MCJ receives federal funding, a necessary

23   element of Plaintiff's RLUIPA claim); *id.* at 30 (limiting answer to interrogatory asking whether

24

1    pork is "served" and "prepared" at MCJ to whether pork is served to MCJ inmates on halal

2    diets).

3            County Defendants treat Plaintiff's requests for production similarly. For example,

4    Plaintiff requests production of the following: "[t]he plaintiff's complete medical records from

5    October 23rd, 2020, to present including but not limited to Medical Kites, responses, notes,

6    emails, medications, etc. until the date of your response." Dkt. 151-1 at 2–3.

7    County Defendants first object to this request for production as "overly broad and unduly

8    burdensome." Dkt 160 at 7. As the party opposing discovery, County Defendants were required

9    to clarify, explain, and support these objections. *Bryant*, 2009 WL 1390794, at *1. However, in

10   responding to Plaintiff's Motion, County Defendants discuss their objections in six general

11   categories and provide few arguments in support of any specific objections made to Plaintiff's

12   discovery requests. *See* Dkt. 159 at 6–8. Although it was their burden to do so, County

13   Defendants provide no further explanation, clarification, or support for why they objected to

14   Plaintiff's request for medical documents as overbroad. *Id.* County Defendants also fail to

15   demonstrate that it would be unduly burdensome to produce any such documents within their

16   possession. *Id.*; *see* Fed. R. Civ. P. 34(a)(1) (requiring production of discoverable materials

17   within a party's possession).

18           County Defendants also objected to Plaintiff's request to produce medical documents as

19   irrelevant. Dkt. 160 at 7. In their response to Plaintiff's Motion, County Defendants maintain that

20   Plaintiff's medical records are not relevant to his claims. Dkt. 159 at 7. However, the relevancy

21   of Plaintiff's medical records is illustrated by County Defendants' own recitation of the legal

22   rights at issue in this suit: "Like RLUIPA, the First Amendment's Free Exercise Clause gives

23   inmates a 'right to be provided with food sufficient to sustain them **in good health** that satisfies

24   the dietary laws of their religion.'" Dkt. 165 at 19 (quoting *Ward v. Walsh*, 1 F.3d 873, 877 (9th

Cir. 1993)) (emphasis added); *see also id.* at 16 (acknowledging that Plaintiff supports his religious meal claims with allegations that the halal meals offered by MCJ aggravated his pre-existing health conditions).

In summary, the Court finds that County Defendants raised reasonable objections to some of Plaintiff's discovery requests. The Court further finds that, notwithstanding their reasonable objections, County Defendants failed to respond to many of Plaintiff's requests for production and interrogatories to the fullest extent possible. While the Court will not require County Defendants to respond to discovery requests that are duplicative or that seek information available through less burdensome means, Fed. R. Civ. P. 26(b)(2)(C)(i) and (ii), County Defendants must provide further responses to all other discovery requests for which no reasonable objections were raised.

Accordingly, the Court directs County Defendants to conduct a reasonable investigation and produce all discovery within their possession as detailed in the conclusion of this Order.

## V.    Conclusion

Based on the foregoing, Plaintiff's Motion to Compel Discovery from HDS Defendants (Dkt. 149) is denied for failure to meet and confer. Plaintiff's Motion to Compel Discovery from County Defendants (Dkt. 151) is granted in part and denied in part. County Defendants must conduct a reasonable investigation and produce the following discovery within their possession and **limited to** the time when Plaintiff was housed at MCJ from October 2020 through February 2024:

1. Plaintiff's First Request for Documents within 30 days (Dkt. 151-1 at 2–3):
   a. **Request No. 2**: Every grievance, kite, medical kite, inmate request form, e-message that the plaintiff has ever sent, since Oct. 23rd, 2020, through the date of your response.
   **Required Production**: All grievances, kites, medical kites, and inmate request forms submitted by Plaintiff.

b. **Request No. 3**: Any and all policies, directives, or instructions to staff regarding prayer rugs, kufis, headgear, and halal diets, anything concerning the Islamic faith.
**Required Production**: All policies and written directives regarding prayer rugs, kufis, and halal diets for MCJ inmates.

c. **Request No. 5**: The plaintiff's complete medical records from October 23rd, 2020, to present including but not limited to Medical Kites, responses, notes, emails, medications, etc. until the date of your response.
**Required Production**: All records of Plaintiff's medical care, including notes and nonprivileged correspondence, and written responses to his requests for medical treatment.

d. **Request No. 6**: Any and all documents created by any Mason County Employee, or 3rd party contractor, in response to any grievance filed by the plaintiff since Oct. 23, 2020, until the date of your response including but not limited to briefing logs, control room logs, or walk through logs.
**Required Production**: All written responses and resolutions for grievances submitted by Plaintiff.

e. **Request No. 9**: All staff and inmate diet menus including but not limited to halal diets, kosher diets, catholic diets, normal diets, Christmas meals, etc. from 2020 until the date of your response.
**Required Production**: All menus for inmate meal services, excluding holiday meals.

2. First Set of Interrogatories for Defendants Randy Newell and Joel Harris (Dkt. 151-1 at 4)
    a. **Request No. 7**: Defendant Newell how come the jail does not purchase prayer rugs, kufis, and hijabs?
    b. **Request No. 8**: Defendant Harris please answer #7.
    **Required Information/Response**: Did Mason County purchase prayer rugs, kufis, and hijabs for MCJ inmates? Explain.

3. Extra Interrogatories for Defendant Mason County, 1st Set (Dkt. 151-1 at 5):
    a. **Request No. 7**: Why does the county not hire a paid Muslim provider?
    **Required Information/Response**: Did Mason County pay for Islamic religious services? Explain.

4. Plaintiff's First Set of Interrogatories for All Defendants and Requests for Production of Documents (Dkt. 151-1 at 8–9).
    a. **Request No. 1**: State the duties of Defendant Hanson if those duties are set forth in any job description provide those documents.
    b. **Request No. 2**: State the duties of Defendant Schronberg if those duties are set forth in any job description, or any other document produce these documents including but not limited to any training in Islam.
    c. **Request No. 3**: State the duties of Defendant Newell if those duties are set forth in any job description, or any other document produce these documents including but not limited to any training in Islam.

ORDER ON MOTIONS TO COMPEL - 19

d. **Request No. 4**:  State the duties of Defendant Harris if those duties are set forth in any job description, or any other document produce these documents including but not limited to any training in Islam.

e. **Request No. 5**: State the duties of Defendant Blush if those duties are set forth in any job description, or any other document produce these documents including but not limited to any training on Islam.

f. **Request No. 7**: State the duties of John Bell if those duties are set forth in any job description, or any other document produce these documents including but not limited to Islamic diets training in Islamic diets.

**Required Information/Response and Production**: State the duties of each identified Defendant in Requests No. 1–5, 7. If their duties are documented in writing, provide those documents.

g. **Request No 10**: State the reason the prayer rugs, kufis, and prayer beads were denied when Brian Parkhurst donated them to the Plaintiff.

**Required Information/Response**: Did MCJ receive and/or reject donations of prayer rugs, kufi, and prayer beads? Explain.

5. Interrogatories for Defendant Mason County (Dkt. 151-1 at 10–11):

a. **Request No. 8**: Who dictates what food is served to inmates at the Mason County Jail, please provide their full names and addresses, so that they can be contacted?

**Required Information/Response**: Who made decisions about what food was served to inmates at MCJ?

b. **Request No. 11**: Have you received Federal Funding, if so: Please provide a complete budget breakdown of all federal funding spent at the Mason County Jail for the last 5 years.

**Required Information/Response**: Have you received federal funding for use at MCJ?

c. **Request No. 13**: When was the Policy Changed allowing inmates to be able to have prayer rugs and Kufis? Are you aware that case law allows inmates to be able to have prayer beads, what is the policy for prayer beads?

**Required Information/Response**: What were MCJ's policies and practice regarding inmates' use of prayer rugs, kufis, and prayer beads? Did MCJ change its policies or practices regarding inmates' use of prayer rugs, kufis, or prayer beads? If so, explain when and why.

d. **Request No. 17**: Does the medical dept. have control over diets for inmates with medical problems? Do food services have control over diets for inmates with medical problems?

**Required Information/Response**: What authority did the medical department and food services have over food served to inmates with medical problems?

6. Interrogatories for Defendant, Defendant Hanson, Kevin (Dkt. 151-1 at 12–13):

a. **Request No. 4**: Was a prayer rug, kufi, and prayer beads donated at the Mason County Jail if so by who were these items rejected and why?

**Required Information/Response**: Are you aware of any rejected donations of prayer rugs, kufi, and prayer beads to MCJ? If so, who rejected the donations and why?

    b. **Request No. 6**: How many Qurans does the Jail have in the library and how many Christian books does the Jail have, please list the titles?

    **Required Information/Response**: Were Qurans are available at the MCJ library? If so, how many?

7. Interrogatories for Defendant Shane Schronberg (Dkt. 151-1 at 14–15):

    a. **Request No. 9**: Is there any way for a Muslim inmate to purchase a prayer rug, kufi, or prayer beads from their inmate account?

    **Required Information/Response**: Could an inmate purchase a prayer rug, kufi, or prayer bead from their inmate account?

    b. **Request No. 12**: Is pork served to anyone or prepared at the Mason County Jail?

    **Required Information/Response**: Was pork served to any inmates or prepared in the same facilities used to prepare inmate meals?

8. Interrogatories for Defendant Harris, Joel (Dkt. 151-1 at 16)

    a. **Request No. 5**: Have you ever provided services in any fashion for the jail? If so, please list the hour, when, and where.

    **Required Information/Response**: What services did you provide to MCJ? Identify if you received compensation for any of those services.

County Defendants' responses to the discovery requests outlined below are due not later than December 18, 2024.

Dated this 4th day of December, 2024.

David W. Christel
United States Magistrate Judge