1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

8
9

10

MATHEW COLLETT,

               Plaintiff,

11

   v.

12

MASON COUNTY, et al.,

13

               Defendants.

14

CASE NO. 3:23-CV-5654-TMC-DWC

REPORT AND RECOMMENDATION

Noting Date: **April 9, 2025**

15      The District Court has referred this 42 U.S.C. § 1983 action to United States Magistrate

16  Judge David W. Christel. Presently before the Court are Defendants Mason County, Kevin

17  Hanson, Shane Schoeneberg, Randy Newell, Phill Harris, and Paula Blush's (collectively

18  "County Defendants") Motion for Summary Judgment, Defendants Healthcare Delivery Systems

19  Inc ("HDS"), Shannon Slack, Julie Rice, and Nurse Bree's (collectively "HDS Defendants")

20  Motion for Judgment on the Pleadings, and Defendants Summit Foods Service, LLC ("SFS" or

21  "Summit Foods") and John Bell's (collectively "SFS Defendants") Motion for Summary

22  Judgment and Judgment on the Pleadings. Dkts. 165, 168, 172.

23
24

REPORT AND RECOMMENDATION - 1

1    After consideration of the relevant record, the undersigned recommends all Motions (Dkt.

2  165, 168, 172) be granted and judgment be entered in favor of all Defendants on each Count of

3  the Second Amended Complaint.

4  **I.    Background**

5    Plaintiff Mathew Collett, an inmate currently confined at Washington Corrections Center

6  ("WCC"), initiated this action in July 2023 concerning the conditions of his pretrial detention at

7  Mason County Jail ("MCJ"). Dkts. 1, 1-1. In his Second Amended Complaint, Plaintiff brings

8  four claims for relief under 42 U.S.C § 1983 and the Religious Land Use and Institutionalized

9  Persons Act of 2000, 42 U.S.C. §§ 2000cc to 2000cc-5 ("RLUIPA").[1] Dkt. 60. Plaintiff claims

10  his First Amendment and RLUIPA rights were violated when Defendants failed to serve non-

11  vegetarian halal meals (Count I), failed to avoid pork contamination by preparing halal meals in

12  a separate kitchen and serving the meals on separate trays (Count II), refused to provide various

13  religious implements (Count III), and refused to provide a paid religious advisor (Count IV). *Id.*

14  at 6–10. Plaintiff seeks monetary damages and injunctive relief. *Id.* at 14.

15    On November 4, 2024, County Defendants moved for summary judgment, HDS

16  Defendants sought dismissal of Plaintiff's claims, and SFS Defendants moved for summary

17  judgment on Plaintiff's claims against Defendant Summit Foods and sought dismissal of

18  Plaintiff's claims against Defendant Bell. Dkts. 165, 168, 172. All Defendants submitted

19  evidence in support of their Motions. *See* Dkts. 35, 106, 166 (County Defendants' evidence);

20  Dkts. 131-1, 169 (HDS Defendants' Evidence); Dkts. 173 (SFS Defendants' evidence). In

21  addition, SFS Defendants filed a Notice of Joinder in portions of the Motions filed by County

22

23

---

24    [1] Plaintiff does not bring a Fourteenth Amendment equal protection claim in his Second Amended
Complaint, so it is unnecessary to address any portion of the Motions challenging this nonexistent claim. *See* Dkt.
60.

1  Defendants and HDS Defendants asserting Plaintiff's requests for injunctive relief were moot.
2  Dkt. 177.

3      Plaintiff responded, with supporting evidence, to County Defendant's Motion. Dkt. 186;
4  *see* Dkts. 183, 185 (Orders Granting Extensions). All Defendants filed replies. Dkt. 188, 189,
5  191. County Defendants submitted additional evidence with their reply, and HDS Defendants
6  and SFS Defendants noted Plaintiff's failure to respond to their Motions. Dkt. 190; Dkt. 188 at 1;
7  Dkt. 191 at 1.

8      The parties have not requested oral argument. Regardless, the Court has reviewed the
9  record and determined oral argument is not necessary in this case.

10  **II.    HDS Defendants' Motion and Evidence**

11      HDS Defendants' Motion is titled "Motion for Summary Judgment of Dismissal." Dkt.
12  168. The Motion seeks dismissal for failure to state a claim and cites the standard of review
13  applicable to motions to dismiss and motions for judgment on the pleadings. *Id.* Despite the
14  relief sought and standard of review cited, HDS Defendants also submitted evidence in support
15  of the Motion. Dkts. 131-1, 169.

16      On February 28, 2025, the Court advised HDS Defendants that it construed their Motion
17  as a motion for judgment on the pleadings. Dkt. 193. The Court also advised HDS Defendants
18  that, under this construction, the Court would not consider the evidence they submitted in
19  support of the Motion. *Id.* at 2 (referencing evidence at Dkts. 131-1, 169). The Court then
20  provided HDS Defendants the opportunity to show cause why their Motion should instead be
21  construed as a motion for summary judgment and their evidence considered. *Id.* HDS Defendants
22  responded to the show cause order, stating they did not object to the Court construing the Motion
23  as a motion for judgment on the pleadings. Dkt. 194. Accordingly, the Court construes HDS
24  Defendants' Motion as a motion for judgment on the pleadings.

"Unless a court converts a Rule 12(b)(6) or 12(c) motion into a motion for summary judgment, a court generally cannot consider material outside of the complaint (e.g., facts presented in briefs, affidavits, or discovery materials)." *CF Gainesville Inv., LLC v. Astronergy Solar, Inc.*, 615 F. Supp. 3d 1137, 1144 (C.D. Cal. 2022). As such, the Court will not consider the evidence (Dkts. 131-1, 169) HDS Defendants submitted in support of this Motion.

## III.    Injunctive Relief

The Court first addresses Plaintiff's requests for injunctive relief. All Defendants contend Plaintiff's request for injunctive relief relating to the conditions of confinement at MCJ are moot because Plaintiff is no longer a pretrial detainee subject to the conditions at that facility. Dkts. 165 at 10–11; Dkt. 168 at 5–6; Dkt. 172 at 3–4.

"[W]hen a prisoner is moved from a prison, his action will usually become moot as to conditions at that particular facility." *Nelson v. Heiss*, 271 F.3d 891, 897 (9th Cir. 2001); *Dilley v. Gunn*, 64 F.3d 1365, 1368 (9th Cir. 1995) ("An inmate's release from prison while his claims are pending generally will moot any claims for injunctive relief relating to the prison's policies unless the suit has been certified as a class action."). An exception to the mootness doctrine exists if a plaintiff shows there is a "reasonable expectation" or "demonstrated probability" he will return to the prison from which he was transferred. *See Darring v. Kincheloe*, 783 F.2d 874, 876 (9th Cir. 1986).

Plaintiff was originally transferred from MCJ in February 2024 to receive medical treatment at a different facility as he awaited final judgment and sentencing in an unrelated state court prosecution. *See* Dkt. 96. Within his response to County Defendants' Motion, Plaintiff submitted a sworn declaration by his criminal defense attorney, Brett A. Purtzer, stating the following: "Mathew Collett will be transported to Shelton, WA, to attend his sentencing on

February 7, 202[5]." Dkt. 186 at 7.[2] However, the date of Plaintiff's sentencing hearing has passed, and Plaintiff has since notified the Court of his subsequent transfer and change of address to WCC. *See* Dkt. 192; *see also Jones v. Williams*, 791 F.3d 1023, 1031 (9th Cir. 2015) (taking judicial notice of plaintiff's release from custody to find claims for injunctive relief were moot). Thus, the Court finds there is no reasonable expectation or demonstrated probability Plaintiff will return to MCJ in the foreseeable future.

Accordingly, the undersigned recommends dismissing Plaintiff's requests for injunctive relief as moot and granting all Defendants' Motions (Dkts. 165, 168, 172) with respect to that form of relief.

## IV.     Motions for Judgment on the Pleadings (Dkts. 168, 172)

HDS Defendants ask the Court to review the sufficiency of Plaintiff's allegations under the motion for judgment on the pleadings standard, which is the same standard applied to 12(b)(6) motions to dismiss. *See* Fed. R. Civ. P. 12(c); *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012). SFS Defendants seek the same relief with respect to Defendant Bell. Dkt. 172 at 6–7. Before examining the Motions, the Court notes that Plaintiff has not responded in opposition to the Motions for Judgment on the Pleadings filed by HDS Defendants or SFS Defendants or to the arguments presented therein. *See* Dkt. 186 (responding only to arguments and evidence presented in County Defendants' Motion). Rule 7(b)(2) of this Court's local rules provides that, "[e]xcept for motions for summary judgment, if a party fails to file papers in opposition to a motion, such failure may be considered by the court as an admission that the motion has merit." In accordance with this rule, the Court considers Plaintiff's failure to respond

---

[2] Mr, Purtzur's declaration was signed on December 20, 2024, so, given his use of the future tense, the Court presumes the reference to a sentencing date occurring in February 2024, rather than February 2025, to be a typographical error.

in opposition to be an admission the Motions for Judgment on the Pleadings (Dkts. 168, 172) have merit. The Court nevertheless examines both Motions on the merits.

A.  Standard of Review

A motion to dismiss can be granted only if a plaintiff's complaint, with all factual allegations accepted as true, fails to "raise a right to relief above the speculative level". *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556, 570).

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Specific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus, et al.*, 551 U.S. 89, 93 (2007) (internal citations omitted). However, the pleading must be more than an "unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. While the Court is to construe a *pro se* complaint liberally, such construction "may not supply essential elements of the claim that were not initially pled." *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992).

B.  Causation Standards for § 1983 and RLUIPA

To state a § 1983 claim for a First Amendment violation, a plaintiff must allege facts sufficient to show "the government action in question substantially burdens the [plaintiff's] practice of [their] religion." *Jones*, 791 F.3d at 1031. As with all claims proceeding under § 1983, a plaintiff asserting First Amendment violations must also attribute any alleged substantial

burden to the personal conduct of individual defendants or to the policies and practices of counties and private entities acting under color of state law. More specifically, to plausibly allege personal participation in a First Amendment violation by individual defendants, a plaintiff must allege facts sufficient to show the defendant personally caused or contributed to the alleged substantial burden by taking an affirmative act, participating in another's affirmative act, or failing to perform an act which he or she was legally required to perform. *Arnold v. Int'l Bus. Machines Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981). On the other hand, counties and other entities acting under color of state law will only be liable for a First Amendment violation upon a plaintiff's showing that an official policy, practice, or custom was the "moving force" behind the alleged substantial burden. *Monell v. Department of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978); *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1139 (9th Cir. 2012) ("[W]e see no basis in the reasoning underlying *Monell* to distinguish between municipalities and private entities acting under color of state law.").

A plaintiff must also plausibly allege a substantial burden to state a RLUIPA claim. *See Worldwide Church of God v. Philadelphia Church of God, Inc.*, 227 F.3d 1110, 1121 (9th Cir. 2000). RLUIPA only prohibits substantial burdens imposed by a government entity or individual acting under color of state law. *See* 42 U.S.C. §§ 2000cc-1, 2000cc-5. A substantial burden may be imposed indirectly by withholding a benefit or directly through penalties, but there must be a nexus between a defendant's act, failure to act, or a controlling policy. *See Warsoldier v. Woodford*, 418 F.3d 989, 995–96 (9th Cir. 2005) (describing various means of imposing a substantial burden under RLUIPA and concluding the element was satisfied where an official grooming policy and punitive sanctions "intentionally put[] significant pressure on inmates… to abandon their religious beliefs by cutting their hair").

1    C.  <u>HDS Defendants</u>

2        HDS Defendants argue they are entitled to dismissal on all Counts because Plaintiff has

3  failed to plausibly allege any action for which they may be held liable under § 1983 or RLUIPA.

4  Dkt. 168 at 6–11. The Court agrees.

5        The only reference to an HDS Defendant in the body of the Second Amended Complaint

6  is found in Count I. *Id.* at 6–8. In Count I, Plaintiff alleges the vegetarian halal diet served at

7  MCJ imposed a substantial burden on his religious expression by causing painful gas and other

8  gastrointestinal issues. *Id.* Plaintiff alleges he had a medical appointment with Defendant Rice to

9  address these stomach issues on October 12, 2023. *Id.* at 8. He further alleges he requested halal

10 meals without rice and beans at that appointment. *Id.* When Defendant Rice allegedly told

11 Plaintiff that was not an available option, Plaintiff alleges he asked to be removed from the halal

12 diet and placed back on the standard diet. *Id.*

13       Even assuming the vegetarian halal meals served at MCJ imposed a substantial burden on

14 Plaintiff's sincerely held religious beliefs, Plaintiff does not allege that Defendant Rice was

15 personally involved in determining the composition of those meals. In addition, Plaintiff fails to

16 allege sufficient facts demonstrating Defendant Rice was authorized to grant his request for new

17 halal meals with a different composition. *See Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988)

18 ("The inquiry into causation must be individualized and focus on the duties and responsibilities

19 of each individual defendant whose acts or omissions are alleged to have caused a constitutional

20 deprivation."); *see also Blake v. Thomas*, No. 23-15151, 2024 WL 5205741, at *1 (9th Cir. Dec.

21 24, 2024) ("[I]f an officer lacks authority to grant the request, the officer's denial does not

22 qualify as direct personal participation and he cannot be individually liable.") (citing *Peralta v.*

23 *Dillard*, 744 F.3d 1076, 1082–83 (9th Cir. 2014) (en banc) (prison doctor not individually liable

24 for failure to provide medical treatment when treatment was "impossible to provide" because

doctor "had no control over the budget")). And, while Plaintiff generally references "medical," these references are not enough to show the personal involvement of Defendant Rice or any other individual HDS Defendant, nor do they demonstrate the existence of an HDS policy, practice, or custom that was the moving force behind any substantial burden alleged in Count I.

There is no mention of an individual HDS Defendant, Defendant HDS, or "medical" in Plaintiff's factual allegations for the remaining Counts. Viewed in the light most favorable to Plaintiff, the Second Amended Complaint presents no plausible allegation demonstrating Defendants Rice, Slack, or Bree personally participated in the alleged contamination of his halal meals (Count II) or that they were in any way involved in the alleged refusal to provide non-meal-related religious resources at MCJ (Counts III and IV). Similarly, there is no allegation attributing the substantial burdens asserted in these Counts to an official policy, practice, or custom belonging to Defendant HDS.

Therefore, the Court concludes that, viewed in the light most favorable to Plaintiff, he has failed to state a viable claim for relief against HDS Defendants in any Count of the Second Amended Complaint. Accordingly, the undersigned recommends granting HDS Defendants' Motion for Judgment on the Pleadings (Dkt. 168) and dismissing Plaintiff's claims with respect to HDS Defendants.

D.  Defendant Bell

Next, SFS Defendants correctly argue Plaintiff has failed to state a claim against Defendant Bell in any Count of the Second Amended Complaint. Dkt. 172 at 6–7. Other than Plaintiff's references to a "head cook" in the caption of his pleading and in the defendant information section, there is no mention of Defendant Bell in the Second Amended Complaint. *See* Dkt. 60. Plaintiff makes no allegation Defendant Bell was personally involved in determining the content of his halal meals (Count I), that Defendant Bell's acts or failures to act

resulted in, or contributed to, the alleged contamination of Plaintiff's meals (Count II), or that Defendant Bell was personally involved in the alleged refusal to provide non-meal-related religious resources at MCJ (Counts III and IV). Therefore, the Court concludes Plaintiff has failed to state a viable claim for relief against Defendant Bell under the First Amendment or RLUIPA. Accordingly, the undersigned recommends dismissing Plaintiff's claims with respect to Defendant Bell.

**V.    County Defendants' Motion for Summary Judgment (Dkt. 165)**

County Defendants raise several arguments for summary judgment in their favor. They first argue summary judgment is appropriate because Plaintiff has not shown his injuries were caused by the personal conduct of Defendants Hanson, Schoeneberg, Newell, Harris, and Blush. Dkt. 165 at 11–13. County Defendants further argue Plaintiff has not shown he suffered a substantial burden to his religious expression in violation of the First Amendment or RLUIPA. Dkt. 165 at 13–17, 25–31. And, with respect to Plaintiff's First Amendment claim in Count I, County Defendants argue any substantial burden Plaintiff may have suffered was reasonable in light of the test outlined in *Turner v. Safley*, 482 U.S. 78, 89 (1987). *Id.* at 19–22. They also argue that all County Defendants sued individually are entitled to qualified immunity on Plaintiff's First Amendment claims in Counts I and II and argue the same individuals may not be held liable for damages under RLUIPA in any Count.[3] *Id.* at 27. Finally, County Defendants argue Plaintiff has failed to exhaust administrative remedies on Count IV. *Id.* at 28–29.

---

[3] To the extent County Defendants suggest that Defendant Mason County may not be sued for damages under 42 U.S.C. § 1983, they are mistaken. *See* Dkt. 165 at 18 (arguing Plaintiff's "constitutional claims seeking damages must be brought against prison officials in their individual capacities under § 1983"). It is well established that counties and municipalities may be held liable for damages in official capacity § 1983 actions. *See Mitchell v. Dupnik*, 75 F.3d 517, 527 (9th Cir. 1996) (citing *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981)).

1      A.  <u>Summary Judgment Standard</u>

2      Summary judgment is proper only if the pleadings, discovery, and disclosure materials on

3  file, and any affidavits, show that there is no genuine dispute as to any material fact and that the

4  movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is

5  entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient

6  showing on an essential element of a claim in the case on which the nonmoving party has the

7  burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of

8  fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for

9  the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586

10  (1986) (nonmoving party must present specific, significant probative evidence, not simply "some

11  metaphysical doubt"); *see also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a

12  material fact exists if there is sufficient evidence supporting the claimed factual dispute,

13  requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby,*

14  *Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d

15  626, 630 (9th Cir. 1987).

16      B.  <u>Evidence</u>

17      County Defendants primarily rely on a sworn declaration from Defendant Newell, who is

18  a member of the correctional staff at MCJ. *See* 165 at 9–10; *see also id.* at 2–6, 13–15, 17, 24,

19  26–27, 29–30 (citing Dkt. 35 as "Newell Decl."). County Defendants also present certain

20  interrogatory responses to rebut arguments made in Plaintiff's response. Dkt. 190 at 4–20. The

21  statements therein, including those discussed in the Court's analysis below, are made under

22  penalty of perjury. *Id*

23      During his pretrial detention, Plaintiff used the administrative grievance process to

24  submit kites and grievances about the quality of the food, meal services, and availability of other

religious resources at MCJ; Defendant Newell submits copies of Plaintiff's relevant kites and

grievances as exhibits to his declaration,[4] and declares as follows:

First, Plaintiff was approved for placement on a halal diet in April 2023, which consisted

of rice, beans, and potatoes. *Id.* at 1 (citing Dkt. 35 at 6 (Inmate Kite Request Form ID:

10052861)). The halal diet did not contain animal-based proteins , and pork not served to any

inmate at MCJ. *Id.* Both before and for four months after he was placed on the halal diet,

Plaintiff complained about the quality of the food at MCJ. *Id.* (citing Dkt. 35 at 8–9 (Inmate

Grievance Request Form ID: 10207829), *id.* at 14–15 (Inmate Grievance Request Form ID:

10197909), and *id.* at 17–18 (Inmate Grievance Request Form ID: 8810476)). None of these

grievances included complaints about adverse health effects or discomfort related to the

vegetarian halal meals. Defendant Newell states that MCJ staff provided Plaintiff with a prompt

response to each grievance. *Id.* at 2. In addition, Plaintiff was informed that he could supplement

his religious meals with animal-based protein by purchasing halal seafood from the MCJ

commissary. *Id.*

Next, between May and June 2023, Plaintiff submitted complaints about the food services

at MCJ. *Id.* (citing Dkt. 35 at 56–57 (Inmate Grievance Request Form ID: 10227559 submitted

on May 15, 2023) and *id.* at 59–60 (Inmate Grievance Request Form ID: 10495243 submitted on

June 23, 2023)). Plaintiff claimed his halal meals were prepared in the same kitchen and served

on the same trays as pork-products brought in by MCJ staff. *Id.* Despite Plaintiff's complaints,

Defendant Newell explains that the trays used to serve inmates were not used by MCJ staff, all

kosher and halal meals were prepared using separate "pots, pans, cutting boards, and utensils,"

---

[4] As discussed in the analysis below, Plaintiff also submitted copies of kites and grievances filed during his pretrial detention at MCJ. Dkt. 186 at 16–17, 19–23, 25–27, 19.  However, none of the statements in Plaintiff's kites and grievances are made under penalty of perjury, and Plaintiff has not filed a separate declaration attesting to the veracity of the information contained therein.

and "[a]ll trays are cleaned and sanitized with heat and chemicals to ensure cleanliness and safety." *Id.* at 1–2. Plaintiff was informed of these circumstances in the facility response to his grievances. *Id.* at 2, 56–57, 59–60.

Last, in May 2023, Plaintiff complained about the lack of other religious resources provided at MCJ. *Id.* at 3 (citing Dkt. 35 at 62–63 (Inmate Grievance Request Form ID: 10247062)). In particular, Plaintiff alleged that MCJ provided many religious resources to Christian inmates but refused to provide Plaintiff resources for his faith. *Id.* at 3. Defendant Newell explained that all religious materials at MCJ were donated and none of the donations were solicited by the Jail. *Id.* In addition, Plaintiff was advised that MCJ did not employ a paid chaplain for inmates of any faith. *Id.* Further, Plaintiff was provided an extra towel to use for prayer, and Defendant Newell gave Plaintiff contact information for four Islamic centers so that he may personally solicit donations of religious materials and services. *Id.*

C. First Amendment

Under the First Amendment, inmates retain the right to the free exercise of their religion, but this right is not absolute and must be balanced against the realities of incarceration and the legitimate needs of prison administration. Prison regulations or practices that intrude upon inmate's free exercise rights are permissible so long as they are "reasonably related to legitimate penological interests." *Turner*, 482 U.S. at 89. Implicit in the reasonably related standard is an understanding that lawful incarceration brings about necessary restrictions on certain constitutional rights due to the security, discipline, and operational concerns of prisons. *Shakur v. Schriro*, 514 F.3d 878, 884 (9th Cir. 2008). The standard also "ensures the ability of corrections officials to anticipate security problems and to adopt innovative solutions to the intractable problems of prison administration and avoids unnecessary intrusion of the judiciary into

1    problems particularly ill suited to resolution by decree." *O'Lone v. Estate of Shabazz*, 482 U.S.

2    342, 349–50 (1987).

3        In evaluating a prisoner's First Amendment claim brought under 42 U.S.C. § 1983, the

4    Court follows a two-step inquiry. First, the plaintiff must show that the challenged action or

5    policy substantially burdened his sincere religious beliefs. *Jones*, 791 F.3d at 1031–32. "A

6    substantial burden…place[s] more than an inconvenience on religious exercise; it must have a

7    tendency to coerce individuals into acting contrary to their religious beliefs or exert substantial

8    pressure on an adherent to modify his behavior and to violate his beliefs." *Ohno v. Yasuma*, 723

9    F.3d 984, 1011 (9th Cir. 2013) (internal citations and quotations omitted).

10       If a plaintiff demonstrates a substantial burden, the Court next determines whether the

11   challenged action or policy is reasonably related to legitimate penological interests. *Turner*, 482

12   U.S. at 89; *Shakur*, 514 F.3d at 883–84. In evaluating this relationship, courts consider four

13   factors, which are often referred to as the *Turner* factors: (1) whether the challenged action or

14   regulation has a valid, rational connection to a legitimate penological interest; (2) whether the

15   plaintiff retains alternative means of exercising their religion; (3) the impact accommodating the

16   religious practice would have on prison staff, other inmates, and institutional resources; and (4)

17   the absence of ready alternatives that would fully accommodate the inmate's rights at *de minimis*

18   cost to the institution. *Shakur*, 514 F.3d at 884 (citing *Turner,* 482 U.S. at 89–90). Under the

19   *Turner* factors, the burden of proof "is not on the State to prove the validity of prison regulations

20   but on the [plaintiff] to disprove it." *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003).

21       1.   *Failure to Serve Non-vegetarian Halal Meals (Count I)*

22       In Count I, Plaintiff alleges the vegetarian halal diet served at MCJ imposed a substantial

23   burden by causing painful gas and other gastrointestinal issues, which made it difficult to comply

24

1    with his sincerely held religious beliefs. *Id.* at 6–8.[5] At the outset, the Court notes that Plaintiff

2    has not produced evidence of his sincerely held religious beliefs in response to County

3    Defendants' Motion. Nevertheless, "[c]ourts typically give credence to assertions of sincerely

4    held religious beliefs in absence of any challenge to their sincerity or religious motives, and so

5    long as they are not 'so bizarre, so clearly nonreligious in motivation, as not to be entitled to

6    protection under the Free Exercise Clause.'" *Ohno*, 723 F.3d at 1011 (quoting *Thomas v. Review*

7    *Bd. of Ind. Emp't Sec. Div.,* 450 U.S. 707, 715–16 (1981)). County Defendants do not dispute

8    Plaintiff's sincerely held religious beliefs for the purpose of their Motion for Summary

9    Judgment. Dkt. 165 at 14 n. 9. Nor do they dispute that Plaintiff's beliefs required him to comply

10   with a halal diet with respect to Count I. *Id.* at 15. Thus, for the following analysis, the Court

11   assumes Plaintiff's claims are based on sincerely held religious beliefs.

12          "Inmates…have the right to be provided with food sufficient to sustain them in good

13   health that satisfies the dietary laws of their religion." *McElyea v. Babbitt*, 833 F.2d 196, 198

14   (9th Cir. 1987). There is no affirmative requirement to provide religious meals containing meat,

15   so long as those meals are nutritionally adequate and do not violate religious dietary restrictions.

16   *Sprouse v. Ryan*, 346 F. Supp. 3d 1347, 1359 (D. Ariz. 2017) (observing "[p]risoners have no

17   right to any particular quantum of meat in their diets," even religious diets) (quoting *Fonseca v.*

18   *Cal. Dep't of Corrs. and Rehab.*, No. 14cv787-LAB (BLM), 2015 WL 4172194, at *4 (S.D. Cal.

19   July 10, 2015); *Sefeldeen v. Alameida*, 238 F. App'x 204, 206 (9th Cir. 2007) (finding no

20   substantial burden where plaintiff "fail[ed] to carry his evidentiary burden of proof" that

21   vegetarian meals violated religious principles, were nutritionally inadequate, or directly caused

22

23          [5] The Court references allegations in the Second Amended Complaint only to provide context for each
     claim. The Second Amended Complaint is not signed under penalty of perjury, so the allegations therein are not
24   evidence to be considered at summary judgment. *See* Dkt. 60 (Second Amended Complaint); *Whitman v. Mineta*,
     107 F. App'x 28, 29 n.1 (9th Cir. 2004).

1   any adverse health effects). Therefore, to satisfy the substantial burden element of a First

2   Amendment claim, a plaintiff must show religious meals were nutritionally inadequate, caused

3   adverse health effects, or otherwise violated their religious principles. *Id.* If the prison offers

4   alternative means of adhering to religious dietary requirements or remaining in good health, a

5   plaintiff must also adduce evidence discrediting the alternative. *See Jones*, 791 F.3d at 1035

6   (finding no substantial burden where halal-compliant alternatives were available and the plaintiff

7   failed to show other accommodations were required "to remain healthy or to satisfy the dietary

8   requirements of his religion").

9         County Defendants present evidence showing Plaintiff was approved for placement on a

10  halal diet in April 2023. Dkt. 35 at 1. The halal diet served at MCJ did not contain meat and

11  consisted primarily of rice, beans, and potatoes. *Id.* Plaintiff does not contend, or respond with

12  evidence showing, the typical content of the halal diet was prohibited by his faith or that the halal

13  meals were nutritionally inadequate. *C.f. Torres v. Aramark Food*, No. 14-CV-7498 (KMK),

14  2015 WL 9077472, at *1, 9 (S.D.N.Y. Dec. 16, 2015) (finding substantial burden element was

15  satisfied where religious diet contained insufficient calories and plaintiff was unable to

16  supplement meals with commissary purchases). Thus, to satisfy the substantial burden element of

17  his First Amendment claim, Plaintiff must show the halal meals either caused adverse health

18  effects or exerted substantial pressure on him to violate his religious beliefs in some other way.

19        With regard to adverse health effects, County Defendants show that, while Plaintiff made

20  other complaints about MCJ's halal meals in May 2023, he did not complain about any adverse

21  health effects at that time. Dkt. 35 at 2 (citing Dkt. 35 at 8–9 (Inmate Grievance Request Form

22  ID: 10207829), *id.* at 14–15 (Inmate Grievance Request Form ID: 10197909)). And Plaintiff has

23  not submitted, or pointed to, any evidence in the record to show adverse health effects.

24

1    The Court notes Plaintiff did complain about illness from halal meals in two kites

2    attached to his Second Amended Complaint. Dkt. 60 at 15–16 (Inmate Request Forms dated

3    September 13 and September 25, 2023). In these kites, which were submitted over four months

4    after he began the halal diet, Plaintiff complains that halal meals containing rice and beans had

5    made him feel ill for "over a week." *Id.* at 15. Importantly, while Plaintiff's kites show he

6    complained of illness from eating meals containing rice and beans, the kites are not evidence that

7    Plaintiff actually suffered ill-effects from the halal meals. *Saddiq v. Trinity Servs. Grp.,* 198 F.

8    Supp. 3d 1051, 1069 (D. Ariz. 2016), *aff'd sub nom. Saddiq v. Ryan*, 703 F. App'x 570 (9th Cir.

9    2017) ("[G]rievances are only evidence that an inmate submitted complaints and of what he

10    stated in them; they are not evidence of what actually occurred."). Moreover, in the same kites,

11    Plaintiff acknowledged that he was provided eggs and tortillas as an alternative to rice and beans.

12    *Id.* at 15.

13    County Defendants also submit evidence showing Plaintiff could, and did, supplement

14    the vegetarian halal meals by purchasing halal seafood and other items from the MCJ

15    commissary. Dkt. 35 at 2, 20–54 (record of more than thirty commissary purchases, ranging from

16    $2.10 to $80.09, from April 23 until July 2023). Plaintiff has not responded with evidence

17    showing the alternatives provided, including the ability to purchase halal-compliant animal-

18    based proteins at the MCJ commissary, were insufficient to satisfy the requirements of his

19    religious diet or to sustain him in good health. *See Billie v. Cty. of Santa Barbara*, 2023 WL

20    3330321 at *6 (C.D. Cal. 2023) (finding inmate who was free to supplement religious diet with

21    foods from the prison commissary failed to establish substantial burden on religious activity);

22    *Shoemaker v. Williams*, No. CV 10-0826-JO, 2013 WL 528306, at *2 (D. Or. Feb. 11, 2013)

23    (finding no substantial burden on Muslim inmate served nutritionally adequate vegetarian and

24    seafood meals with ability to supplement diet through halal commissary purchases).

1  Based on the evidence submitted for consideration at summary judgment, the Court finds

2  County Defendants have shown no genuine issue of fact remains as to whether Plaintiff suffered

3  a substantial burden from the halal meals at MCJ, and Plaintiff has failed to adduce evidence to

4  the contrary. As such, the Court concludes County Defendants are entitled to summary judgment

5  on Plaintiff's First Amendment claims in Count I.[6]

6        2.  *Failure to Avoid Pork Contamination by Preparing Halal Meals in Separate Kitchen*

7            *and Serving the Meals on Separate Trays (Count II)*

8        In Count II, Plaintiff alleges he was served halal meals that were contaminated with pork

9  products brought in by MCJ staff and with nonhalal food residue from trays used to serve other

10  inmates. Dkt. 60 at 9–10. County Defendants submit evidence showing that pork was not served

11  to any inmate at MCJ. Dkt. 35 at 1–2. And, though MCJ staff may have brought pork into the

12  Jail for their own consumption, Defendant Newell testifies that MCJ staff did not eat on the trays

13  used for inmate meal services. *Id.* The evidence submitted by County Defendants further shows

14  that religious meals at MCJ were prepared using separate "pots, pans, cutting boards, and

15  utensils" and "[a]ll trays [were] cleaned and sanitized with heat and chemicals to ensure

16  cleanliness and safety." *Id.* at 2. County Defendants' evidence shows precautionary measures

17  were taken to avoid cross-contamination of religious meals with other inmate and staff meals,

18  and Plaintiff has not responded with evidence showing, despite these measures, he was served

19  halal meals contaminated with pork or other nonhalal foods.

20        Rather, Plaintiff makes a conclusory argument that contamination occurred and submits a

21  copy of a grievance showing he complained about pork contamination on one occasion. Dkt. 186

22  at 5 (arguing "county says it does not serve pork to inmates, I say it does"); *id.* at 25 (Inmate

23

24  _____

[6] Having concluded that County Defendants are entitled to summary judgment based on the substantial burden element, it is unnecessary to address County Defendants' alternative arguments for summary judgment on Count I under the *Turner* analysis and the qualified immunity doctrine. Dkt. 165 at 18–23.

1   Grievance Request Form ID: 11474387). But arguments made in legal memoranda are not

2   evidence. *See Smith v. Mack Trucks, Inc.*, 505 F.2d 1248, 1249 (9th Cir. 1974) ("[L]egal

3   memoranda and oral argument are not evidence, and they cannot by themselves create a factual

4   dispute sufficient to defeat a summary judgment motion where no dispute otherwise exists.").

5   And Plaintiff's grievance is only evidence demonstrating he complained of pork contamination,

6   it does not show pork contamination actually occurred. *Saddiq*, 198 F. Supp. 3d at 1069; *see also*

7   *Jones*, 791 F.3d at 1032 (finding plaintiff could not create genuine issue of fact about pork

8   contamination based on hearsay and testimony not based on personal knowledge).

9           Finally, even if Plaintiff had shown contamination of his religious meals actually

10  occurred, there is still no evidence drawing a nexus between the alleged contamination and the

11  acts or failures to act by County Defendants as opposed to sporadic mistakes, negligence, or the

12  unauthorized actions of others.[7] Claims regarding contamination of religious meals, such as

13  allegations of pork-tainted halal meals, require the plaintiff to establish not only that

14  contamination occurred but that it resulted from a defendant's intentional acts or failure to act as

15  required. *Saddiq*, 198 F. Supp. 3d at 1068–70 (granting summary judgment because evidence of

16  "occasional or sporadic food service issues" were not "fairly attributable" to actions of

17  defendant). In other words, mere negligence in food handling is not enough to impose liability.

18  *See Billie v. Brown*, No. 19-3078, 2019 WL 6792806, at *2–3 (C.D. Cal. Aug. 28, 2019); *Combs*

19  *v. Washington*, 660 F. App'x 515, 517 (9th Cir. 2016) ("The sporadic mistakes in kosher food

20

21

22          [7] In his Second Amended Complaint, Plaintiff alleges one potential source of pork contamination was
unidentified "trustees" putting small amounts of pork in inmate meals "without staff knowledge." *See* Dkt. 60 at 9.

23  Even if Plaintiff submitted evidence of this sort of unauthorized contamination at MCJ, it would not be sufficient to
impose liability on County Defendants. *Holsombach v. Norris*, No. 2:08-CV-00022-JMM-BD, 2009 WL 424166, at

24  *6 (E.D. Ark. Feb. 18, 2009) (granting summary judgment where food contamination was the result of "random
incidents of misconduct," not intentional acts or failure to act by defendants).

1  preparation principles here resulted from inadvertence and did not rise to the level of a

2  constitutional violation.").

3    Accordingly, the Court finds no genuine issue of material fact remains as to the alleged

4  contamination of Plaintiff's halal meals and concludes County Defendants are entitled to

5  summary judgment on Plaintiff's First Amendment claims in Count II.[8]

6    3.  *Refusal to Provide Various Religious Implements (Count III)*

7    In Count III, Plaintiff alleges he was not provided access to religious implements such as

8  prayer rugs, prayer beads, and kufis at MCJ. Dkt. 60 at 10–12. County Defendants submit

9  evidence showing MCJ relied fully on donations to supply any religious resources to inmates,

10  and Plaintiff was provided information so that he may solicit donations of religious implements

11  from Islamic centers. Dkt. 35 at 3.

12    Prisons may require inmates to procure religious clothing and other religious implements

13  on their own. *See Ward*, 1 F.3d at 880 (holding prison had no affirmative obligation to provide

14  inmate with religious clothing); *Florer v. Congregation Pidyon Shevuyim, N.A.*, 639 F.3d 916,

15  923 (9th Cir. 2011) (finding no substantial burden where plaintiff failed "to show that

16  [d]efendants fostered or furthered any government policy that blocked him from obtaining

17  religious materials or leadership from other sources"). Nevertheless, Plaintiff contends that he

18  should have been provided a kufi, prayer rug, and prayer beads because he successfully solicited

19  a donation of those items. Dkt. 186 at 3 (arguing an alleged donation was rejected "for no reason

20  other than a simple ban on these items."). Plaintiff supports this contention by pointing only to

21

22

23

24

[8] Having concluded that County Defendants are entitled to summary judgment on other grounds, it is unnecessary to address County Defendants' alternative argument under the qualified immunity doctrine. Dkt. 165 at 27.

REPORT AND RECOMMENDATION - 20

his kite asking why a donation of "Islamic materials" made by Bryan Parkhurst—a nonparty and mental health counselor at MCJ—was rejected.[9] Dkt. 186 at 16–17.

County Defendants reply with evidence disproving Plaintiff's contention. Specifically, in an answer to Plaintiff's interrogatories made under penalty of perjury, Defendant Hanson states MCJ did not reject a proper donation of prayer rugs, kufis, or prayer beads. Dkt. 190 at 11–12. Defendant Hanson explains that instead:

> [Nonparty] Parkhurst, a Mental Health Counselor at [MCJ], brought in items from outside the jail and attempted to give them directly to [Plaintiff]. The items were denied for not following jail donation and security protocol. Parkhurst took the items away without attempting to donate them per the jail protocol. Parkhurst was not authorized to purchase religious materials to give to inmates nor is that his role.

*Id.* Plaintiff has not submitted any evidence to suggest Plaintiff was, or would have been, denied access to religious clothing or implements donated according to the MCJ protocol. Rather, under MCJ policy, the items Nonparty Parkhurst attempted to donate would have been permitted so long as they did not "pose a risk to safety and security of the facility." Dkt. 190 at 6. In fact, Defendant Hanson states that he personally "coordinated with the Chaplain Harris to investigate if [MCJ] could obtain those items as donations from a Mosque." *Id.* at 12. And, in his own sworn interrogatory responses, Defendant Harris states he used his own funds "to have some items on hand after he was made aware" of the events at issue in this case. *Id.* at 16.

Next, Plaintiff argues he was only provided a towel as an alternative to a prayer rug, which created a substantial burden on his religious expression. Dkt. 186 at 4. Again, there is no evidence showing Plaintiff was prohibited from purchasing or possessing a prayer rug instead of the jail-provided towel. Even in circumstances where prohibitions or other barriers to religious

---

[9] As with his other kites and grievances, Plaintiff's kite is evidence demonstrating that he inquired about a rejected donation by Nonparty Parkhurts, but it is not evidence demonstrating a rejected donation actually occurred. *Saddiq,* 198 F. Supp. 3d at 1069.

practice exist, courts have found no substantial burden where a plaintiff is provided reasonable

alternatives for their religious practice, such as towels in place of prayer rugs or alternative

locations for religious services. *See Pickens v. Heuerman*, No. 20-cv-2213-JBM, 2020 WL

6928604, at *2 (C.D. Ill. Nov. 24, 2020) (finding inmate's assertion "that having to use a prayer

towel rather than a prayer rug degrades the symbolism of a prayer rug" insufficient to

demonstrate substantial burden); *see also Austin v. Brown*, No. 20-56028, 2022 WL 1537366, at

*1 (9th Cir. May 16, 2022) (affirming summary judgment where defendants presented evidence

that an alternative location for religious services was available and plaintiff failed "to

demonstrate a genuine issue of material fact that his religious exercise was nevertheless

substantially burdened").

Accordingly, the Court finds County Defendants have shown no genuine issue of fact

exists as to whether Plaintiff suffered a substantial burden related to his access to religious

implements at MCJ. As such, County Defendants are entitled to summary judgment on

Plaintiff's First Amendment claims in Count III.

4.  *Refusal to Provide Paid Religious Advisor (Count IV)*

In Count IV, Plaintiff alleges County Defendants refused to provide religious advisors

and counseling services for Muslim inmates. Dkt. 60 at 13.

County Defendants first argue summary judgment is appropriate on Count IV because

Plaintiff failed to exhaust his administrative remedies. Dkt. 165 at 28–29. To prove this

affirmative defense, County Defendants present only written testimony from Defendant Newell,

stating he was unable to locate any grievances Plaintiff may have filed about religious advisors at

MCJ. Dkt. 35 at 3. The Court finds County Defendants have not presented sufficient evidence

regarding exhaustion. *Saddozai v. Davis*, 35 F.4th 705, 709 (9th Cir. 2022) ("A lack of PLRA

exhaustion is a non-jurisdictional affirmative defense."); *Albino v. Baca*, 747 F.3d 1162, 1171

1    (9th Cir. 2014) ("The [Supreme] Court made clear…that the defendant in a PLRA case must

2    plead and prove nonexhaustion as an affirmative defense"). For example, County Defendants

3    have not provided sufficient evidence showing how to exhaust all administrative remedies at

4    MCJ, nor have they replied to Plaintiff's evidence that he attempted to exhaust available

5    remedies as to this claim. See Dkt. 186 at 19, 21–22 (Inmate Grievance Request Forms ID:

6    10876813 and 10904908); Dkt. 189. As a result, the Court finds County Defendants have not

7    shown they are entitled to summary judgment on Count IV on exhaustion grounds.

8        County Defendants next argue summary judgment is proper because the First

9    Amendment does not require that jails provide access to religious advisors of every faith, and

10   they submit evidence showing MCJ relied wholly on volunteers, like Defendant Harris, to

11   provide religious services to inmates of any faith. Dkt. 165 at 29–31; Dkt. 35 at 3; *see also* Dkt.

12   190 at 18. Additionally, Defendant Newell testified that he provided Plaintiff contact information

13   for multiple Islamic centers so he may solicit voluntary services from religious advisors of his

14   faith. Dkt. 35 at 3.

15       The circumstances demonstrated by County Defendants are similar to those deemed

16   lawful in *Ward*, 1 F.3d at 880. In that case, a Jewish inmate requested that a prison provide him

17   with an Orthodox rabbi. *Id.* However, there was no such rabbi on staff and, though the prison did

18   not solicit volunteers on the inmate's behalf, there was no restriction on the inmate's ability to

19   contact a rabbi or to be visited by a rabbi at the prison. *Id.* Because the prison had no

20   "affirmative obligation to provide a rabbi," the Ninth Circuit concluded there was no violation of

21   the plaintiff's rights. *Id.* The same reasoning applies here: although MCJ did not employ a

22   religious advisor for Muslim inmates (or inmates of any other faith), the evidence demonstrates

23   Plaintiff was permitted to contact a religious leader of his choice and was also provided the

24   resources to do so. Under such circumstances, the refusal to solicit a religious leader on

Plaintiff's behalf imposes, at most, an inconvenience on Plaintiff's religious expression, not a substantial burden. *See also Allen v. Toombs*, 827 F.2d 563, 569 (9th Cir. 1987) ("Since the prison administration is not under an affirmative duty to provide each inmate with the spiritual counselor of his choice…, and since [prison policy] permits outside religious leaders to enter [and] address the religious needs of Native American inmates, we conclude that the [prison] policy provides a reasonable opportunity for the plaintiffs to exercise their faith.").

Plaintiff disagrees, arguing that official Mason County policies required County Defendants to recruit, select, and train chaplains for all MCJ inmates. Dkt. 186 at 4 (citing Dkt. 186 at 10–14). Even assuming the policies Plaintiff references created such an obligation, internal policies are not equivalent to constitutional mandates, and the constitution does not require prison officials to provide clergy to inmates of every faith. *See Reimers v. State of Or.*, 863 F.2d 630, 632 (9th Cir. 1988) ("[A] prisoner is not entitled to have the clergyman of his choice provided for him in the prison.") (citing *Allen*, 827 F.2d at 569 and *Gittlemacker v. Prasse*, 428 F.2d 1, 4 (3d Cir.1970)).

Accordingly, County Defendants have shown no genuine issue of fact remains as to whether the alleged refusal to provide a paid religious advisor for Plaintiff's faith imposed a substantial burden on his religious expression, and Plaintiff has failed to rebut their showing. Therefore, the Court concludes County Defendants are entitled to summary judgment on Plaintiff's First Amendment claims in Count IV.[10]

D. RLUIPA

RLUIPA provides in relevant part:

---

[10] Because the Court finds all County Defendants are entitled to summary judgment on other grounds, it is unnecessary to address County Defendants' alternative argument that Plaintiff has failed to demonstrate personal participation by the County Defendants sued individually in any Count. Dkt. 165 at 11–13.

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution ... even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—
>
> (1) is in furtherance of a compelling governmental interest; and
>
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1.

To demonstrate a RLUIPA violation, a plaintiff "bears the initial burden" of showing the challenged state action constitutes "a substantial burden on the exercise of his religious beliefs." *Warsoldier v. Woodford*, 418 F.3d 989, 994 (9th Cir. 2005). RLUIPA does not define "substantial burden." *San Jose Christian Coll. v. City of Morgan Hill*, 360 F.3d 1024, 1034 (9th Cir. 2004). However, the Ninth Circuit has explained that, to be considered a "substantial burden," the challenged action "must impose a significantly great restriction or onus upon [religious] exercise," such that it "intentionally puts significant pressure on inmates…to abandon their religious beliefs." *Warsoldier*, 418 F.3d at 995–96. Courts consider whether a challenged action "denies an important benefit because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1124–25 (9th Cir. 2013) (cleaned up). As with claims brought under the First Amendment, a substantial burden requires "more than an inconvenience on religious exercise." *Guru Nanak Sikh Soc'y of Yuba City v. Cnty. of Sutter*, 456 F.3d 978, 988 (9th Cir. 2006) (internal quotation marks omitted). If the plaintiff is unable to demonstrate they suffered a substantial burden at the hand of any defendant, the inquiry ends, and summary judgment is appropriate.

If, on the other hand, the plaintiff demonstrates a defendant imposed a substantial burden on his religious exercise, the evidentiary burden shifts to the defendant, who must prove "any

substantial burden" on the "exercise of [the plaintiff's] religious beliefs is both 'in furtherance of a compelling governmental interest' and the 'least restrictive means of furthering that compelling governmental interest.'" *Warsoldier*, 418 F.3d at 995 (quoting 42 U.S.C. § 2000cc-1(a)). The Supreme Court has not read RLUIPA as elevating the "accommodation of religious observances over an institution's need to maintain order and safety." *Cutter v. Wilkinson*, 544 U.S. 709, 722 (2005). Safety and security remain compelling government interests, and courts owe deference to "institutional officials' expertise in this area." *Id.* at 725 n.13. Further, to satisfy the least restrictive means requirement, prison officials are not required to refute every conceivable alternative for furthering a compelling interest, nor are they required to prove that they considered less restrictive alternatives at a particular point in time, they need only refute alternatives offered by the prisoner. *Holt v. Hobbs*, 574 U.S. 352, 371–72 (2015) (Sotomayor, J., concurring) (citing *United States v. Wilgus*, 638 F.3d 1274, 1289 (10th Cir. 2011)).

1. *Defendant Mason County*

The parties' arguments and evidence regarding Plaintiff's RLUIPA claim against Defendant Mason County mirror the arguments and evidence raised with respect to his First Amendment claims discussed above. *See generally* Dkts. 165, 186. In particular, County Defendants argue there is no genuine issue of material fact as to whether a challenged action by Defendant Mason County imposed a substantial burden on Plaintiff's religious beliefs. Dkt. 165 at 13–17, 25–31.

With respect to the religious meals challenged in Count I, Plaintiff has not carried his initial burden of showing the halal meals served at MCJ caused adverse health effects or conflicted with religious dietary requirements to the extent of pressuring Plaintiff to abandon or alter his religious beliefs. *See Warsoldier*, 418 F.3d at 994 (plaintiffs bear the "initial burden" of demonstrating a substantial burden under RLUIPA).

County Defendants present evidence showing Plaintiff's request to be placed on a halal diet was approved almost immediately after it was submitted. Dkt. 35 at 1 (citing Inmate Request Form ID: 10052861 (request submitted the evening of April 19, 2023 and approved the next morning)). Their evidence further shows Plaintiff could, and did, supplement his vegetarian halal meals with halal seafood and other foods available for purchase at the MCJ commissary. Dkt. 35 at 2, 20–54. Additionally, for the first four months after Plaintiff was placed on the halal diet, his grievances focused on the quality and lack of meat in MCJ's halal meals. Dkt. 35 at 8–9 (Inmate Grievance Request Form ID: 10207829); *id.* at 14–15 (Inmate Grievance Request Form ID: 10197909). In fact, Plaintiff complained about the quality of the vegetarian religious meals at MCJ before he was even placed on the halal diet. *Id.* at 17–18 (Inmate Grievance Request Form ID: 8810476 submitted in October 2022)). At that time, Plaintiff was advised the vegetarian halal meals may be considered more nutritious than other prisoner meals because they contain more fresh produce. *Id.* at 18. When Plaintiff eventually complained about feeling ill from eating halal meals containing rice and beans in September 2023, his own statements in, and the facility response to, those complaints indicate Plaintiff was provided alternatives to rice and beans and scheduled for a medical appointment to address his reported illness. Dkt. 60 at 15–16.

Thus, the evidence submitted for consideration at summary judgment does not reveal the religious meal accommodations provided by Defendant Mason County exerted substantial pressure on Plaintiff to abandon or alter his religious beliefs such that he suffered a substantial burden under RLUIPA. *See, e.g.*, *Sefeldeen*, 238 F. App'x at 206 (finding prisoner's grievances about "perceived nutritional inadequacy" of vegetarian meals did "not reveal a substantial burden" under RLUIPA, "especially when compared to cases where inmates faced punishment or loss of coveted privileges for following their religious beliefs.") (citing *Warsoldier,* 418 F.3d at 995–96).

1      Next, with respect to Count II, Plaintiff has shown no nexus between the alleged

2   contamination of his halal meals and a policy or practice of Defendant Mason County. *See*

3   *Saddiq*, 198 F. Supp. 3d at 1069 (granting summary judgment on similar claim under First

4   Amendment and RLUIPA where "evidence d[id]not support [plaintiff's] allegations that [the

5   defendant] regularly serve[d] spoiled, inedible, contaminated, or religiously-forbidden foods").

6   Instead, the County Defendants show precautionary measures were taken to avoid cross-

7   contamination of religious meals with other inmate and staff meals. These measures included not

8   serving pork to any inmate irrespective of their dietary or religious requirements, preparing

9   religious meals using separate "pots, pans, cutting boards, and utensils," and serving all meals on

10  trays that were "cleaned and sanitized with heat and chemicals to ensure cleanliness and safety."

11  *Id.* at 2. Plaintiff has not responded with evidence showing, despite these measures, Defendant

12  Mason County's policies and practices caused or failed to prevent non-isolated incidents of

13  religious-meal contamination such that Plaintiff suffered a substantial burden in Count II.

14     Similarly, County Defendants show there is no genuine issue of fact as to whether

15  Defendant Mason County imposed a substantial burden on Plaintiff's religious exercise in

16  Counts III and IV. There is no evidence or allegation Plaintiff was prohibited from soliciting

17  donations of religious implements or voluntary services from religious advisors, nor is there

18  evidence showing Plaintiff would have been punished or denied a privilege if he chose to do so.

19  *C.f. Warsoldier*, 418 F.3d at 995–96 (substantial burdens may be imposed directly by prohibiting

20  religious exercise and indirectly by withholding benefits or punishing inmates for engaging in

21  such exercise). Rather, the evidence submitted for consideration at summary judgment shows, at

22  most, Plaintiff was inconvenienced in his religious exercise by Defendant Mason County's

23  refusal to solicit donations and voluntary services on Plaintiff's behalf and its requirement that

24  successfully solicited donations comply with certain donation protocol. *See* Dkt. 190 at 11–12.

Moreover, any inconvenience in this regard was lessened when Plaintiff was provided contact

information for nearby Islamic centers by a member of MCJ correctional staff. Dkt. 35 at 3.

In sum, Plaintiff has failed to overcome County Defendants' showing that no genuine

issue of fact remains as to whether Defendant Mason County imposed a substantial burden on

Plaintiff's religious beliefs in any Count. Accordingly, the undersigned recommends granting

County Defendants' Motion for Summary Judgment (Dkt. 165) with respect to Defendant Mason

County on Plaintiff's RLUIPA claims in all Counts.

### 2. *Individual County Defendants*

Next, County Defendants seek summary judgment in favor of Defendants Hanson,

Schoeneberg, Newell, Harris, and Blush, arguing RLUIPA does not provide a cause of action for

damages against county officials sued individually.[11] Dkt. 165 at 11 n.6. The Court agrees.

Even if Plaintiff made the requisite showing of a substantial burden for any of his

RLUIPA claims, all County Defendants sued individually are entitled to summary judgment for a

separate reason: only federal funding recipients may be held liable for damages under RLUIPA.

The Ninth Circuit consistently finds individual state and local officials may not be sued for

damages under RLUIPA and dismisses such claims. *See Jones*, 791 F.3d at 1031 (citing *Wood v.

Yordy*, 753 F.3d 899, 904 (9th Cir. 2014)) ("RLUIPA does not authorize suits for damages

against state officials in their individual capacities because individual state officials are not

recipients of federal funding and nothing in the statute suggests any congressional intent to hold

---

[11] County Defendants further argue that they are entitled to summary judgment because Plaintiff's RLUIPA claims are not premised on a "substantial burden…imposed in a program or activity that received Federal funding assistance," and present evidence to show MCJ is not a federal-funding recipient. Dkt. 189 at 4 n.5 (quoting 42 U.S.C. § 2000cc-1(b); Dkt. 190 at 5–6. However, this argument and evidence is raised for the first time in County Defendants' reply and does not rebut an argument raised by Plaintiff. As such, it will not be considered by the Court. *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief."). Moreover, County Defendants do not present any argument or evidence about whether Defendant Mason County is a federal funding recipient subject to liability under RLUIPA.

1   them individually liable."); *Fuqua v. Raak*, 120 F.4th 1346, 1359 (9th Cir. 2024) ("[O]ur

2   decision in *Wood* rested squarely, at least in part, on the constitutional holding that the Spending

3   Clause does not allow Congress to impose individual damages liability on state or local officials

4   who are not themselves the recipients of federal funds.").

5           For this reason, the Court concludes Defendants Hanson, Schoeneberg, Newell, Harris,

6   and Blush are entitled to summary judgment on Plaintiff's RLUIPA claims and recommends

7   granting County Defendants' Motion for Summary Judgment (Dkt. 165) in this respect.

8   **VI.    SFS Defendants' Motion for Summary Judgment (Dkt. 172)**

9           Finally, SFS Defendants seek summary judgment on all claims against Defendant

10  Summit Foods. Dkt. 173. Plaintiff has not responded in opposition to SFS Defendants' Motion.

11  *See docket*.

12          A.  Unopposed Summary Judgment Standard

13          Summary judgment is not proper merely because an opposing party fails to respond. *See*

14  Local Rules, W.D. Wash. LCR 7(b)(2); *Cristobal v. Siegel*, 26 F.3d 1488, 1495 n.4 (9th Cir.

15  1994) (unopposed motion may be granted only after the court determines there are no material

16  issues of fact and judgment is appropriate as a matter of law). The burden on the nonmovant to

17  respond arises only when the moving party has met its initial burden of production under Rule

18  56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). A court may, however, grant an

19  unopposed motion for summary judgment if the movant's evidence is itself sufficient to support

20  the motion and does not on its face reveal a genuine issue of material fact. *See Carmen v. S.F.*

21  *Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001). Moreover, if no factual showing is made

22  in opposition to a motion for summary judgment, the district court has no obligation under Rule

23  56 "to scour the record in search of a genuine issue of triable fact." *Simmons v. Navajo Cnty.,*

24  *Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010).

1

2    B.  <u>Evidence</u>

3    The evidence submitted by SFS Defendants includes a copy of the food management

4    service agreement between Defendant Summit Foods and Defendant Mason County. Dkt. 173 at

5    6–14. The "Services" section of that agreement shows Defendant Summit Food's service

6    obligations at MCJ were limited to food management services, which included providing

7    "Religious meals as requested." *Id.* at 8. SFS Defendants also present a sworn declaration from

8    Attorney Angela Anderson, who is the Deputy General Counsel for Defendant Summit Foods.

9    Dkt. 173 at 4. In her declaration, Attorney Anderson states Defendants Summit Foods has

10   provided food management services at MCJ since 2017. *Id.* at 4. Throughout that time,

11   Defendant Summit Foods "never had the authority to determine" (1) "which inmates at [MCJ]

12   received religious meal accommodations" or (2) "the kind of religious diet and eating

13   accommodations made for each inmate at [MCJ]." *Id*. Rather, Defendant Summit Foods has

14   "only been responsible for fulfilling religious meal orders placed by [MCJ]." *Id.*

15   C.  <u>Analysis</u>

16   SFS Defendants' evidence shows that, although Defendant Summit Foods was

17   responsible for food management services at MCJ, it lacked authority to make decisions about

18   Plaintiff's religious meals and other eating accommodations related to his religious diet. This

19   evidence, which is not disputed by Plaintiff, is sufficient to show no genuine issue of fact

20   remains as to Defendant Summit Foods' liability for Plaintiff's religious meal claims in Counts I

21   and II. Furthermore, as Defendant Summit Foods' duties were limited to food management

22   services at MCJ, SFS Defendants have shown Defendants Summit Foods was not involved in

23   decisions relating to the availability of religious implements and advisors at MCJ. As a result,

24   SFS Defendants have also demonstrated no genuine issue of fact remains as to Defendants

Summit Foods' liability for Plaintiff's other religious accommodations claims in Counts III and

IV. Accordingly, the Court finds Defendant Summit Foods is entitled to summary judgment on Plaintiff's First Amendment and RLUIPA claims in all Counts of the Second Amended Complaint.

**VII.     Conclusion**

For the reasons set forth above, the undersigned recommends granting the Motion for Summary Judgment filed by County Defendants (Dkts. 165), the Motion for Judgment on the Pleadings filed by HDS Defendants (Dkt. 168) and the combined Motion for Summary Judgment and Judgment on the Pleadings filed by SFS Defendants (Dkt. 172). It is further recommended judgment be entered in favor of all Defendants on Plaintiff's First Amendment and RLUIPA claims asserted in each Count of the Second Amended Complaint.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit not later than **fourteen (14) days** from the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar **fourteen (14) days** from the date they are filed. Responses to objections may be filed by **the day before the noting date**. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **April 9, 2025**.

Dated this 25th day of March, 2025.

David W. Christel
United States Magistrate Judge